this state, and then claim exemption from the laws of this state, upon the ground that it has not all its property within this state. We think it is clear from these affidavits that the defendant has property within this state from which the creditors may have some chance of benefit, and therefore the service was brought within the rule. The order should be reversed, with $10 costs and disbursements.

It is sufficient to say, with respect to the motion to dismiss the appeal, that such motion is absolutely frivolous. The result of the position of the defendant, if sustained, would be that, no matter how erroneous the decision of the court below might be, there could be no possible appeal from such order, because there was nobody upon whom to serve the notice of appeal. Where an attorney appears for the purposes of motion, he still remains the attorney sufficient to receive notice of appeal, and the corporation has so far, at least, submitted itself to the jurisdiction of the court. The motion should be denied, with $10 costs. All concur.

---

PEOPLE *ex rel.* BOOKES *v.* WEMPLE, Comptroller.

(*Supreme Court, General Term, Third Department.* May 27, 1889.)

JUDGES—SALARIES—JUSTICES ON RETIRED LIST.

By Const. N. Y. art. 6, § 13, the term of office of justices of the supreme court and court of appeals is 14 years, but no person can hold such office longer than the last day of December next after his seventieth birthday. "The compensation of every judge of the court of appeals, and of every justice of the supreme court whose term of office shall be abridged pursuant to this provision, and who shall have served as such judge or justice ten years or more, shall be continued during the remainder of the term for which he was elected." Laws 1870, c. 408, § 9, provides that "the justices of the supreme court shall receive an annual compensation of $6,000 each, payable quarterly, in lieu of all other compensation, except that they shall receive in addition to such stated salary a *per diem* allowance of $5 per day for their reasonable expenses when absent from their homes and engaged in holding any general or special terms, circuit court, or court of oyer and terminer, or attending any convention," etc. In the general appropriation bill of 1872 (Laws 1872, c. 541) it is provided that such justices "shall receive the sum of $1,200 annually, * * * in lieu of and in full of all expenses now allowed by law." In the supply bill for 1888 the provision is "for compensation of justices of the supreme court whose terms of office are abridged," etc., $12,000. There are only two such justices in the state. *Held*, that they are entitled to only $6,000 per year during the remainder of their terms.

Appeal from special term, Albany county.

The case is fully stated in the following opinion of the special term, (MAYHAM, J.:)

"The relator, who for more than ten years prior to January 1, 1888, had served as justice of the supreme court in the Fourth judicial district, having been last elected to said office at a general election in 1875, and entered upon the term of 14 years from that date, was by reason of his age abridged in his term of service on the 1st day of January, 1888, under the provisions of section 13, art. 6, of the state constitution, which provides as follows: 'The official term of the said justices and judges, after the adoption of this article, shall be fourteen (14) years from and including the 1st day of January next after their election. But no person shall hold the office of justice or judge of any court longer than until and including the last day of December next after he shall be (70) seventy years of age. The compensation of every judge of the court of appeals, and of every justice of the supreme court, whose term of office shall be abridged pursuant to this provision, and who shall have served as such judge or justice ten (10) years or more, shall be continued during the remainder of the term for which he was elected.' Since January 1, 1888, the relator has been paid compensation quarterly at the rate of $6,000 per annum, being $1,500 per quarter; whereas, prior to that time, he has been paid at the rate of $7,200 per annum, or $1,800 per quarter. Before commencing these proceedings, the relator duly demanded of the defendant, as comptroller, the

auditing and allowing to him, and a warrant for the payment to him, of the additional $300 quarterly, for the quarters ending April, July, and September, as to which he had been paid $1,500, instead of $1,800, as claimed by him. With this demand the comptroller refused to comply, on the ground that the relator was not lawfully entitled to receive the same. The relator now asks for a peremptory *mandamus* to compel the comptroller to certify and pay such claim. Section 14, art. 6, of the constitution provides as follows: 'The judges and justices hereinbefore mentioned shall receive for their services a compensation to be established by law, which shall not be diminished during their official term.' Under these constitutional provisions the legislature has, by various enactments, established by law the rate of compensation which judges are entitled to receive, and it is by the interpretation of these statutes that the right of the parties to this controversy must be determined. Section 9, c. 408, Laws 1870, provides that 'the judges of the supreme court shall receive an annual compensation of $6,000 each, payable quarterly, in lieu of all other compensation, except that they shall receive in addition to such stated salary a *per diem* allowance of $5 per day for their reasonable expenses when absent from their homes, and engaged in holding any general or special terms, circuit court, or court of oyer and terminer, or attending any convention, as hereinafter provided, to revise the rules of said court.' In the general appropriation bill of 1872, (chapter 541, Laws 1872,) the legislature, after making the appropriation to meet the requirements of chapter 408, Laws 1870, for salary and expenses of judges, adds this general provision: 'The said justices of the supreme court, except in the First judicial district, shall receive the sum of $1,200 annually, from the first day of January, 1872, in lieu of, and in full of, all expenses now allowed by law. This subdivision shall not increase the pay of any judge except the justices of the supreme court.' In chapter 643, Laws 1873, and also chapter 373, Laws 1875, which are the general appropriation bills of those years, where the legislature is speaking of funds raised for paying the judges of the court of appeals and justices of the supreme court, the language used is, 'for salaries and expenses.' In the supply bill for 1888 the provision is: 'For compensation of justices of the supreme court whose terms of office are abridged under the provisions of section 13, art. 6, of the constitution, and who shall have served as such justices for ten (10) years, $12,000.'

"We have above quoted all the statutes and constitutional provisions bearing upon the subject, and from them we must, by the application of the ordinary rules of construction, gather the intention of the law-makers. Much depends upon the meaning that is to be given in these various acts to the word 'compensation,' for if this $1,200 per annum, which the relator had always received until the abridgment of his services, was a part of his compensation within the meaning of the word as used in the constitution, art. 6, § 13, then it must 'be continued during the remainder of his term.' In determining this question, the intent of the legislature in enacting the various provisions of the statute upon the subject should first be ascertained, and effect be given to the same in harmony with that intent, as the duty of fixing the compensation of the judges was by the constitution confided to the legislature. The well-settled rules of construing statutes require them to be read and interpreted according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation. *Waller* v. *Harris,* 20 Wend. 561. The rule of construing statutes was very fully, and, I think, correctly, stated in *People* v. *Asten,* 49 How. Pr. 417, which was approved and opinion adopted by the court of appeals in 62 N. Y. 623; and, while the methods of construction referred to in that decision may not all be applicable to the case, I think, so far as applicable, they may with propriety be used to aid in ascertaining the legislative intent, in enacting the statutes relied upon in this con-

troversy. The learned judge in that case enumerates the following maxims, which seem elementary in the construction of statutes: '(1) That statutes are to be interpreted according to the intent, and not necessarily according to the letter; (2) that when the words are obscure, so that the intent does not clearly appear, it may be inferred from the cause or necessity of the statute; (3) that it is the duty of the courts to construe a statute so as to meet the mischief and advance the remedy; (4) that when the provision of a statute is general, everything which is necessary to make the provision effectual is supplied by the common law; (5) that all statutes *in pari materia* are to be read and construed together, as if they formed parts of the same statute, and were enacted at the same time; (6) that when the intent or the mischief intended to be remedied is plain, but the remedy, from the words used, is somewhat obscure, that construction is to be given, if it be possible, which will give full effect to the intent, and not that which will render it void and inoperative.' Within these rules of interpretation it is proper to inquire what the intent of the legislature was in providing for a *per diem* allowance of $5.00 per day, as that provision is contained in section 9, c. 408, Laws 1870. The first part of that section provides that the justices of the supreme court shall receive an annual compensation of $6,000, payable quarterly, in lieu of all other compensation. Then, in the same sentence is the following: 'Except that they shall receive, in addition to such stated salary, a *per diem* allowance of $5.00 per day for their reasonable expenses when absent from home and engaged in holding any general or special term, circuit court, or court of oyer and terminer, or attending any convention, as hereinafter provided, to revise the rules of said court.' It is contended by the learned counsel for the relator that the word 'except,' after 'compensation,' in this section, is a limitation on the preceding phrase, 'in lieu of all other compensation,' and that what follows the word 'except' constitutes a part of the compensation of such justices. It must be conceded that there is great force in this argument, and if the interpretation was to be confined solely to the words used, without regard to the object of the legislation, it might be controlling. But in determining this question we must, as we have seen, take into account and consider the words used in the light of the object which the legislature had in view, and the end the legislation was intended to accomplish. By the first part of the section they had determined to fix the compensation, which in the same section they call 'salary,' at six (6) thousand dollars. They then provided a fund to meet the expenses of the judges when from home in the discharge of certain specified official duties, and make that depend entirely upon the contingency of their being from home, in the discharge of these duties. It seems quite clear, therefore, that at the time of enacting chapter 408 of the Laws of 1870 the compensation or salary of the judges of the supreme court was limited to $6,000, and that the judges were entitled to receive, in addition thereto, such expenses as they might incur by reason of absence from home on especial official business at the rate of $5.00 per day. No one would contend that under that act the judges had a right to a fixed or certain compensation beyond the $6,000. The *per diem* was in no sense compensation for services or a part of the judge's salary. 'Salary' is defined by Webster as 'a recompense or consideration stipulated to be paid to a person for services.'

"If I am right in the above conclusion, it follows that the relator would not be entitled to the amount claimed, unless the same can be paid under the provision of chapter 541 of the Laws of 1872. That act, after providing the means for paying the salaries and expenses of justices of the supreme court, contains the following enactment: 'The said justices of the supreme court, except in the First judicial district, shall receive the sum of $1,200 annually from the first day of January, 1872, in lieu of and in full of all expenses now allowed by law. This subdivision shall not increase the pay of any judge except the justices of the supreme court.' It is insisted by the relator that this

v.5n.y.s.no.4—32

provision manifestly intended this $1,200 as compensation to the judges absolutely, as increased pay, and this contention is based mainly upon the language of the concluding sentence of the section, and that, as the pay of any judge except the justices of the superior court is not increased by this provision, the inference is that the pay of judges, except from the prohibition, is increased, and that the word, ' pay,' as used in this act, is synonymous with ' compensation,' as used in the constitutional provision above quoted. But for the preceding part of this amendment this contention would seem sound, and the deduction made by the relator from the same would be quite controlling. But this provision, like the other to which we have referred, must be construed as a whole, and in construing it the court may look out of the act itself to other statutes *in pari materia*. *Turnpike Co.* v. *People*, 9 Barb. 161; *U. S.* v. *Collier*, 3 Blatchf. 325. And while it is true that the legislature is not vested with judicial functions which will enable it to put judicial construction upon statutes, the subsequent acts of the legislature upon the same subject sometimes afford complete demonstration of the legislative sense of its own language, and affords a safe guide for the court in expounding a statute. *Alexander* v. *Mayor, etc.*, 5 Cranch, 1. ' In interpreting, judges are to explore the intention of the legislature; yet the construction put upon the statutes must be such as is warranted by, or at least not repugnant to, the act.' *McCluskey* v. *Cromwell*, 11 N. Y. 604. ' It is equally well settled that words, absolute of themselves, and language the most broad and comprehensive, may be qualified and restricted by reference to other parts of the same statute in which they are used, and to the circumstances and facts existing at the time to which they relate or are applied.' *Smith* v. *People*, 47 N. Y. 337. In this case the court also used this language: ' In case of doubt or uncertainty, acts *in pari materia*, passed before or after, and whether repealed or unrepealed, may be referred to in order to discover the intent of the legislature in the use of particular terms.' As we have seen, the object of the provision of section 9, c. 408, Laws 1870, in allowing a *per diem* of $5.00 to judges while officially engaged away from their homes, was to pay or provide for their expenses, and was in addition to their salary or compensation for services as judges. Chapter 541 of the Laws of 1872 provides a gross sum of $1,200 to be paid the judges annually in lieu of and in full for all expenses now allowed by law; in other words, in lieu of and in full for the expenses of $5.00 per day while engaged in holding general term, special term, circuit, oyer and terminer, or attending conventions. By section 13, art. 6, of the constitution, the relator is relieved and prevented from performing any of the above enumerated duties, and cannot, therefore, incur any of the contemplated expenses, as these expenses are nowhere in the statute, in express terms, denominated a part of the compensation or salary for services. I am inclined to the opinion that they were not intended by the legislature, and are not within the statute a part of the compensation of the judges, and do not, therefore, come within the prohibition of that constitutional provision. This view seems to be strengthened by chapter 643, Laws of 1873, and chapter 373, Laws of 1875, in both of which acts, in making appropriation for judicial expenses of the state, the legislature use the terms ' salaries and expenses,' thereby seeming to keep up the distinction after the enactment of chapter 541 of Laws of 1872; and again, in chapter 270 of the Laws of 1888, the legislature appropriate as compensation for justices of the supreme court whose terms of office are abridged under the provisions of section 13, art. 6, of the constitution, who shall have served as such justices ten (10) years, $12,000. It appearing from the affidavit of the defendant that but two such cases exist in the state, the legislature provided for them compensation at the rate of $6,000 each a year. I am therefore of the opinion that the relator is entitled to receive of the state as compensation but $6,000 per year from and after the date of the abridgment of his term of service as justice of the supreme

court, and that his application for a peremptory *mandamus* must be denied, with costs."

The relator appeals.

Argued before LANDON and EDWARDS, JJ.

*Hale, Cowan & Buckley*, for appellant.　*Z. S. Westbrook*, for respondent.

PER CURIAM.　Judgment affirmed, *pro forma.*

---

### *In re* GROGAN, Police Justice.

(*Supreme Court, General Term, Third Department.* May 27, 1889.)

1. JUDGE—MISCONDUCT—CHARGES—AFFIDAVITS.
   　　Where a judge is charged with intoxication, affidavits are relevant tending to show that he has well and faithfully discharged his judicial duties.
2. SAME—ORDER OF REFERENCE.
   　　Where all the affidavits in support of the charges are fully met by affidavits on the part of respondent, and on examination of all the papers the charges appear to be substantially answered, a reference will not be ordered under Laws N. Y. 1880, c. 354, which gives the power to order a reference in such cases, but does not require one as a matter of course, or in every instance where there are conflicting affidavits.

In the matter of charges preferred against Patrick Grogan, police justice of the town of Watervliet.

*Esek Cowan* and *Eugene Burlingame*, for relators.　*John H. Gleason* and *Edwin Countryman*, for respondent.

PER CURIAM.　These charges are presented by John H. Hulsapple and Tuyus Dodds.　One of the charges is an alleged neglect to pay over fines.　The residue and by far the greatest part is alleged intoxication.　As to the neglect to pay fines, there are no supporting affidavits.　The charges as to intoxication specify 22 days in 1887, 25 days in 1888, and 5 days in 1889.　As to intoxication, the supporting affidavits specify 2 days in 1887, 3 in 1888, and 3 in 1889.　So far as can be discovered from an examination of the papers, none of the days mentioned in the supporting affidavits are identical with those mentioned in the charges.　In reply the respondent first produces an affidavit of John H. Hulsapple, stating, in substance, that he signed the petition under misstatements made to him, and in the excitement of a political defeat; that he retained no one to present the petition; that he thinks the affiants, or some of them, in the supporting affidavits are unworthy of credit; and that he withdraws the petition and charges.　The respondent produces his own affidavit, contradicting the alleged charges.　He produces affidavits tending to contradict the allegations as to non-payment of fines collected.　He produces affidavits contradicting the allegations of intoxication on the days specified in the supporting affidavits.　Some of these are made by the keepers of saloons where the intoxication is alleged to have taken place.　Some are by persons who testify that on the days specified the respondent was elsewhere, and in their company.　In one instance, where one of the supporting affidavits charged that respondent was carried home intoxicated by a certain physician, the affidavit of the physician denying such occurrence is produced.　The respondent also produces affidavits attacking the character for credibility of the affiants to the supporting affidavits, and charges that they are influenced by personal hostility on account of his judicial acts.　He also produces very numerous affidavits from citizens of respectability, and from persons holding important offices, to the effect that he has discharged the duties of his office with fairness, honesty, and fidelity.　These affidavits of respondents amount in number to more than 270.　We have attempted only to give a brief summary of their general character.　It is evident that on these papers we could